*E-FILED: May 10, 2012*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AERIELLE, LLC, a California corporation,<br><br>    Plaintiff,<br>  v.<br><br>MAXIMO PRODUCT, LLC, a Washington corporation,<br><br>    Defendant. | No. C10-03420 HRL<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

INTRODUCTION

On March 26, 2012 this case was tried to the court, argued, and submitted. The court now issues its Findings of Fact and Conclusions of Law.[1]

FINDINGS OF FACT

1.  Aerielle LLC ("Aerielle"), a Delaware corporation, is a manufacturer of small, consumer-oriented, electronic products, including FM transmitters.

2.  Maximo Products LLC ("Maximo"), a Washington corporation, is a distributor of small electronic products, including FM transmitters.

3.  On January 24, 2006 Maximo became a distributor of Aerielle's products under a written Distributor and Marketing Agreement ("Distributor Agreement"), Exhibit 1.

---

[1] The court has not read the trial transcript but relies on its recollection, its notes, and the exhibits in evidence.

4. Under the Distributor Agreement, Aerielle had the option to sell products to Maximo on credit, but, in the event of buyer's breach, could declare the entire amount due and charge interest of 1.5% per month until paid. (Exhibit 1 ¶ 3.d). In the event of litigation, the prevailing party would recover costs and reasonable attorney fees. (Id. ¶ 13).

5. By mid-2007 Maximo was significantly behind in paying for the FM transmitters it purchased from Aerielle; and, to address that problem, the parties entered a Promissory Agreement, dated June 5, 2007. (Exhibit 2)

6. The Promissory Agreement listed four Aerielle invoices (#300, 307, 320, and 323) covering product previously shipped with a combined due and owing balance of $95,567.12. It listed three other invoices (#341, 342, and 343) that covered product that had been manufactured and specially packaged for Maximo and was awaiting shipment: balance $86,332.80.

7. The Promissory Agreement established an installment payment plan. Maximo would pay $181,899.92 (the sum of $95,567.12 and $86,332.80) in seven monthly payments in specified amounts. The first payment was due June 20, 2007, and the following six on the 17th day of each succeeding month. If Maximo paid as agreed, the entire $181,899.92 would be paid off by December 17, 2007.

8. The Promissory Agreement said that a late payment would cost Maximo a penalty of 15% of the payment amount. It also provided that failure to pay on time and as agreed would be a default causing "the entire outstanding and unpaid amount plus all accrued interest and late fees will be immediately due and payable . . .." Further, in the event of litigation, Maximo would pay Aerielle's "legal and other collection costs," as well as interest at 1.5% per month on any unpaid balance until paid.

9. Jimmy Yau, Maximo's Executive Director, signed both the Distributorship Agreement and the Promissory Agreement. With respect to the Promissory Agreement, he specifically said he understood the terms for installment payments and intended to abide by the terms providing for penalty charges and 18% annual interest in the event of a default.

10. Maximo made the first two installment payments (totaling $35,000) as agreed but then missed the $30,000 August 2007 installment. It paid only $15,000 on the due date. At that time, August 17, 2007, the principal amount owing was $131,899.92. Maximo never thereafter caught up or tried to get back on the prescribed installment plan, although from September 2007 to March 2009 it did make 15 mostly small payments that totaled $59,868. The contractual penalties for missing the installment payments as agreed calculate out to $22,332.80.

11. Yau testified in very general terms that he had frequent "negotiations" with Aerielle's Arthur Cohen after August 17, 2007 that culminated in Cohen agreeing not to charge Maximo for the unshipped product (invoices #341, 342, and 343)—i.e., the product specially packaged for Maximo—and that he (Cohen) would sell it to someone else. However, absolutely no documentation was introduced to support this story, and it is very unlikely that Aerielle would have so casually waived its remedies under the Promissory Agreement or that there would be nothing in writing (not even a stray e-mail) talking about the subject. It is true that an Aerielle accounting record of Aerielle/Maximo transactions (Exhibit 15) does not list invoices #341, 342, or 343. But this court finds that this evidence, while suggestive, does not—even coupled with Yau's testimony—convincingly show a waiver.[2]

12. About two weeks after entering into the Promissory Agreement, Maximo issued a purchase order (Exhibit 4) for FM transmitters at a total price of $1,256. These products were (apparently) shipped by Aerielle and invoiced (#346) to Maximo (Exhibit 3). Maximo did not pay invoice #346. Under the Distributorship Agreement, Aerielle is entitled to the principal amount plus 1.5% per month interest from August 19, 2007.

13. On April 15, 2008, Yau, on behalf of Maximo, wrote a "Payment Guarantee" letter to Aerielle. The letter introduced Maximo Products (HK), an "affiliated procurement and development office in Hong Kong and Shenzhen, China." Yau stated that his company "will

---

[2] The court would have liked to have had testimony from Arthur Cohen as well as Aerielle's accountant, Reba Gong. Other than Maximo's Jimmy Yau, the only trial witness was Aerielle's Donald Yu. Yu did not join Aereille until March 2009 and had no first-hand knowledge of any of the transactions in dispute. The court wonders what pretrial discovery was done.

3

1  guarantee payments for purchase orders issued by Maximo Products (HK) to Aerielle, Inc."
2  (Exhibit 6).

3       14.    Although no explanation was ever offered as to why Aerielle would rely on a
4  guarantee from a company that was in default on its own financial obligations to Aerielle,
5  Aerielle chose to go ahead and accept orders from Maximo (HK) ("HK").

6       15.    On April 16, 2008 HK issued to Aerielle two purchase orders:  80416 (Exhibit
7  7) and 80417 (Exhibit 9) for FM transmitters. On 80416, the purchase price for the quantity
8  ordered was $19,800, and payment was to be made in advance of shipping. (Exhibit 7).
9  Aerielle's corresponding invoice, #421 (Exhibit 8) also noted that the goods were to be paid for
10 before shipment. On 80417, the purchase price was $25,080 and payment was due within 60
11 days after shipment. Aerielle's corresponding invoice #420 (Exhibit 10) confirmed the credit
12 terms ("Net 60").

13      16.    Another Aerielle invoice, #425, was introduced into evidence. It is dated April
14 22, 2008, and was for $300. Rather than a sale of goods, this invoice was for "Rework of new
15 artwork." The problem with this invoice is twofold. First, since a prepayment was specified
16 (but apparently not received) there is no showing Aerielle actually performed the service. No
17 service, no payment due. Second, in this litigation Aerielle alleged that it performed the
18 described service for Maximo and so Maximo owed the $300. However, the only evidence the
19 court has is the invoice itself, and it very specifically lists the entity to be billed as HK.
20 Accordingly, if this is a legitimate debt, it is owed by HK. It does not fall under Maximo's
21 Payment Guarantee because that only guarantees payment of purchase orders issued by HK, and
22 there is no HK purchase order here.

23      17.    Aerielle introduced its banking records showing receipt of money from Maximo
24 and from HK. Supposedly, payments were always made by wire transfer to Aerielle's bank.
25 Exhibit 13 comprises the wire transfer records (summarized on Exhibit 12). These exhibits
26 show that HK made a payment of $13,182 on April 23, 2008 and no more. However, between
27 August and November 2008 Maximo made six payments to Aerielle on behalf of HK which
28

totaled $7,500. This means that by November 2008, Aerielle had received, either from or on behalf of HK, the sum of $20,682.

18. In any event, the court is not satisfied that the $20,682 sum is correct. On July 10, 2008, Aerielle issued invoice #481 (Exhibit 11). This invoice referenced purchase order 80416, but all agreed that because of the description of the goods, the quantity, and the total price, #481 actually pertained to 80417. Invoice #481 reflects a payment (or a credit) of $600, bringing the total amount down from $25,080 to $24,480. Since there is no change indicated in the quantity of items ordered, or in the unit cost, this invoice appears to acknowledge a payment by someone of $600. But, there is no record of a $600 payment on Aerielle's Exhibit 13 (summarized in Exhibit 12), which purportedly showed all payments either by HK or by Maximo.

19. Not only is Aerielle's accounting for payments by or on behalf of HK questionable, but there was no evidence that Aerielle ever actually shipped the goods to HK. No one testified that HK had received the goods covered by invoices #420 and 421. No records from Aerielle established either shipment, delivery, or pickup of the goods in question. No records from HK were offered into evidence.

20. The court declines to accept the invoices as "proof" of shipment, delivery, or pickup. For example, invoice #420, dated April 16, 2008, says "Ship Date 4/16/2008." Yet, it is unlikely Aerielle would ship this order (this one was "Net 60") until it had been prepaid on invoice #421. Indeed, if the goods under #420 had actually been shipped on April 16, 2008, then there would be no reason for invoice #481, which <u>replaced</u> #420, to say "Ship Date 7/10/2008."

21. In short, Aerielle has not proven by a preponderance of the evidence what, if anything, HK owes.

CONCLUSIONS OF LAW

1. Diversity jurisdiction exists and California law applies.

2. As a consequence of Maximo's breach of the Promissory Agreement, Aerielle is entitled to recover:

5

      a. Principal amount of $72,031.93;

      b. Penalties if $22,332.80;[3]

      c. Interest at 1.5% per month on the principal balance;[4] and

      d. Reasonable attorneys fees, which Aerielle may seek by noticed motion.

    3.    As a consequence of Maximo's breach of the Distributorship Agreement, Aerielle is entitled to recover:

      a. Principal amount of $1,256 (invoice #346);

      b. Interest at 1.5% per month since August 19, 2007; and

      c. Reasonable attorneys fees, which Aerielle may seek by noticed motion.

    4.    Aerielle shall take nothing on its claim that Maximo breached the Payment Guarantee.

The court has tried to avoid commingling findings of fact with conclusions of law. However, if any conclusion has inadvertently been labeled as a finding of fact (or vice versa), it should be considered in its true light regardless of the label on it.

Aerielle shall submit a proposed Judgment within 10 days from the date of this order.

Dated: May 10, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[3] Aerielle's remedies under the Promissory Agreement seem especially harsh on Maximo. Nevertheless, California Commercial Code section 2719 permits parties to agree to remedies other than those normally provided by the Commercial Code, and Maximo never argued that the remedies were unreasonable, unconscionable, or contrary to law.

[4] In its Trial Brief Aerielle calculated interest accrued up to the present using the principal balance ($131,899.92) as of the time of the breach. However, Maximo made payments after August 17, 2007 which, in the court's view, reduced the principal balance each time they were made, ultimately down to $72,031.93. Plaintiff must, therefore, do a separate interest calculation after each payment on the principal. If Aerielle and Maximo cannot agree on this calculation, plaintiff should submit a proposed Judgment with the interest amount left blank, and both sides by letter to the court may explain why its calculation is the correct one.

1  5:10-cv-03420-HRL Notice has been electronically mailed to:

2  Margaret Anne Crawford     mcrawford@mcrawfordlaw.com, sandra.sowell@dlapiper.com

3  Paul Gerard Minoletti     pgmlaw@gmail.com, valerie.pgmlaw@gmail.com

4  William J. Frimel     bill@hsfllp.com, billfrimel@gmail.com

5  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.

**United States District Court**
For the Northern District of California